UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW JORDAN LINDNER<br><br>Defendant | CRIMINAL No. 22-cr-10354-WGY |

GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS

The United States of America, by Joshua S. Levy, Acting United States Attorney, and Brian A. Fogerty and Nathaniel Yeager, Assistant United States Attorneys for the District of Massachusetts, opposes defendant Matthew Jordan Lindner's motion to dismiss. ECF No. 36. Citing the Supreme Court's recent decision in *Counterman v. Colorado*, 143 S. Ct. 2106 (2023), Lindner argues that the indictment is deficient because, he claims, it fails to allege that the defendant had the requisite mens rea when he sent a threatening voicemail to the victim in this case. Lindner also argues that the Court should dismiss the indictment because the threatening statements alleged in the indictment are not chargeable threats because they are not "serious expression[s] conveying that a speaker means to 'commit an act of unlawful violence.'" ECF No. 36 at 5–7 (citing *Virginia v. Black*, 538 U.S. 343, 359 (2005)). The Court should reject both of Lindner's arguments.

First, in terms of the defendant's mens rea, the indictment alleges in the conjunctive that Lindner acted purposely and knowingly, which are alternative mental states that exceed the recklessness standard the Supreme Court held to be constitutionally sufficient in *Counterman*. Second, while even on its face, Lindner's anonymous message to the victim is nothing other than

a serious expression of an intent to engage in unlawful violence, the issue of whether those statements are objectively threatening is one that falls squarely within the purview of the jury. Accordingly, the Court should decline Lindner's invitation to make that factual determination and deny the motion.

## Background

In August 2022, inaccurate information spread online regarding the procedures that Boston Children's Hospital ("BCH") health care providers perform on children in the transgender community. Social media accounts began sharing misinformation, falsely claiming that BCH health care providers—namely, those affiliated with BCH's Gender Multispecialty Service—were performing hysterectomies and gender affirmation surgery on patients who were under 18 years of age.

The victim identified in the indictment (hereinafter, "Victim 1") is a physician and faculty member at The National LGBTQIA+ Health Education Center (hereinafter, the "Center"). The Center is a component of The Fenway Institute, which provides educational programs, resources, and consultation to health care organizations with the goal of optimizing quality, cost-effective health care for lesbian, gay, bisexual, transgender, queer, intersex, asexual, and all sexual and gender minority people. Victim 1 specializes in sexual health issues, with a particular focus on gender nonconforming youth. Victim 1 is an advocate for gender-affirming care and the use of puberty blockers and/or hormones to delay puberty in gender-questioning youth.

On August 31, 2022, Lindner, who was then located in Texas, called the Boston-based Center's main telephone line. Without identifying himself, Lindner left a voicemail in which he threatened Victim 1. That voicemail is transcribed below:

> You sick motherfuckers, you're all gonna burn. There's a group of people on their way to handle [Victim 1].[1] You signed your own warrant, lady. Castrating our children. You've woken up enough people. And upset enough of us. And you signed your own ticket. Sleep well, you fuckin' cunt.

ECF No. 12, ¶ 5.

On December 15, 2022, a grand jury returned an indictment charging Lindner with one count of Interstate Transmission of Threatening Communication, in violation of 18 U.S.C. § 875(c). ECF No. 12. The indictment alleges, among other things, that Lindner:

> Knowingly transmitted in interstate and foreign commerce, from Texas to Massachusetts, a communication containing a threat to kidnap and injure the person of another, to wit, Victim 1, for the purpose of issuing a threat and knowing that his communication would be interpreted as a threat.

ECF No. 12, ¶ 7.

**Argument**

    I.    <u>Motion to Dismiss Standard</u>.

A motion to dismiss an indictment requires the Court to look "to see whether the document sketches out the elements of the crime and the nature of the charges so that the defendant can prepare a defense and plead double jeopardy in any future prosecution of the same offense." *United States v. Guerrier*, 669 F.3d 1, 3–4 (1st Cir. 2011) (noting that "in the ordinary course of events, a technically sufficient indictment handed down by a duly empaneled grand jury 'is enough to call for trial of the charges on the merits'") (quoting *Costello v. United States*, 350 U.S. 359 (1956)). "The inquiry at this stage is not whether the government has sufficient evidence to prove the crime, but whether the allegations in the indictment are sufficient on their face." *United States v. Thompson*, 207 F. Supp. 3d 106, 109 (D. Mass. 2016).

---

[1] Victim 1 is identified by last name.

> II. **The Court should deny Lindner's motion because the indictment alleges the defendant acted with mens rea that exceed the mental state approved by the Supreme Court.**
>
>> a. **Under *Counterman*, a mens rea of recklessness is constitutionally sufficient.**

In the true threats context, the government need only prove that the defendant acted recklessly. *Counterman*, 143 S. Ct. at 2111–12. In *Counterman*, a recent case involving a challenge to a Colorado threats statute, the Supreme Court held that while the First Amendment "requires proof that the defendant had some subjective understanding of the threatening nature of his statements . . . a mental state of recklessness is sufficient." *Id.* at 2111–12.

The Court in *Counterman* explained that "[a] person acts recklessly . . . when he 'consciously disregard[s] a substantial [and unjustifiable] risk that the conduct will cause another harm. The standard involves insufficient concern with risk, rather than awareness of impending harm." *Id.* at 2117 (quoting *Voisine v. United States*, 579 U.S. 686, 691 (2016) and *Borden v. United States*, 141 S. Ct. 1817, 1824 (2021)) (internal citations omitted). The Court also held, "[i]n the threats context, [recklessness] means that a speaker is aware 'that others could regard his statements as' threatening violence and 'delivers them anyway.'" *Id.* 2117 (quoting *Elonis v. United States*, 75 U.S. 723, 746 (2015)).

>> b. **The indictment alleges two alternative mental states—acting with a threatening purpose or with knowledge that his communication would be viewed as threat—that exceed the standard approved in *Counterman*.**

The Court should deny Lindner's motion to dismiss because the indictment contains mens rea allegations that exceed the First Amendment requirement identified in *Counterman*. In ruling that recklessness is sufficient under the First Amendment, the Court described the basic mens rea categories: purpose; knowledge; and recklessness. The Court held that "[p]urpose is the most culpable level in the standard mental-state hierarchy . . . [applying] when [the defendant] wants his words to be received as threats." *Counterman*, 143 S. Ct. at 2117 (quoting *United States v.*

4

*Bailey*, 444 U.S. 394 404 (1980)).  Indicating that knowledge falls between purpose and recklessness in the "standard mental-state hierarchy," the Court also explained that "[a] person acts knowingly when 'he is aware that [a] result is practically certain to follow'—so here, when he knows to a practical certainty that others will take his words as threats." *Counterman*, 143 S. Ct. at 2117 (quoting *Bailey*, 444 U.S. at 404).

In this case, the indictment alleges that Lindner had the heightened and intermediate mental states of purpose and knowledge, both of which exceed what is required under *Counterman*. Paragraph 7 of the indictment largely tracks the statutory language of § 875(c), except for the final clause of the penultimate sentence.  ECF No. 12.  That portion of the indictment contains the grand jury's allegations regarding Lindner's mens rea when he transmitted his threatening communication.  Paragraph 7 alleges, in the conjunctive, that the defendant acted "for the purpose of issuing a threat and knowing that his communication would be interpreted as a threat."  ECF No. 12, ¶ 7.[2]  As the Supreme Court held, all the government has to prove is that Lindner "'consciously disregard[ed] a substantial [and unjustifiable] risk" that his communication would be considered a threat. *See Counterman*, 143 S. Ct. at 2117.  Nevertheless, the indictment contains allegations that rise above that constitutional floor, alleging in the alternative that Lindner made the statements "for the purpose of issuing a threat" or knew "his communication would be interpreted as a threat"—i.e., "others [would] take his words as threats." *See Counterman*, 143 S.

---

[2] S*ee, e.g., United States v. Klein*, 850 F.2d 404, 406 (8th Cir. 1988) ("federal pleading requires 'that an indictment charge in the conjunctive to inform the accused fully of the charges'") (citation omitted).

Ct. at 2117 (quoting *Bailey*, 444 U.S. at 404).  With these mens rea allegations, the indictment is more than sufficient.[3]

Lindner's assertion that the purpose and knowledge clauses invoke a purely "objective standard viewed through the eyes of the alleged victim" is inconsistent with the fact that the clauses identify Lindner's own purpose and knowledge.  The clauses are not tethered to what the victim did or knew.  *Compare* ECF No. 12, ¶ 7 *with* ECF No. 36 at 3.  Moreover, Lindner's claim is at odds with the Supreme Court's definitions of the purpose and knowledge mens rea categories.  *Counterman*, 143 S. Ct. at 2117 (defining "purpose" as "when [the defendant] wants his words to be received as threats" and "knowledge" as "when he knows to a practical certainty that others will take his words as threats.").  Accordingly, the indictment comports with First Amendment requirements regarding true threats, and this Court should deny the defendant's motion to dismiss.[4]

### III. The Court should also deny Lindner's motion because the threatening nature of his communication is a factual question for the jury.

The Court should reject Lindner's argument that his statement was insufficiently threatening to be a true threat because that determination must be made by the trial jury.  ECF No. 36 at 6–7.  "It is true that 'statute[s] . . . which make[] criminal a form of pure speech[] must be interpreted with the commands of the First Amendment clearly in mind." *United States v. Clemens*, 738 F.3d 1, 13 (2013) (quoting *Watts v. United States*, 394 U.S. 705, 707 (1969)).

---

[3] Following the recent decision in *Counterman*, the government may seek to obtain a superseding indictment that also alleges the recklessness mens rea that the Court approved.

[4] Lindner's reliance on Justice Sotomayor's concurring opinion in *Counterman* is also misplaced.  ECF No. 36 at 4–6.  It is not the opinion of the Court.  *Counterman*, 143 S. Ct. at 2111 ("The question presented is whether the First Amendment still requires proof that the defendant had some subjective understanding of the threatening nature of his statements.  We hold that it does, but that a mental state of recklessness is sufficient.").  And, here, the indictment alleges mental states that exceed that which the majority of the Court approved in *Counterman*.  *See* ECF No. 12, ¶ 7.

However, "[t]his is not a basis on which to take away from a jury the factual question of whether or not [the defendant's communication] conveyed true threats." *Id.* (citing *United States v. White*, 610 F.3d 956, 959 (7th Cir. 2010) (per curiam) (rejecting defendant's First Amendment argument to dismiss an indictment because "potential First Amendment concerns[s] [are] addressed by the requirement of proof beyond a reasonable doubt at trial, not by a dismissal at the indictment stage.")). Indeed, the First Circuit has held that "'[w]hether a . . . [statement] constitutes a threat is an issue of fact for the trial jury,' involving assessments of both credibility and context." *Id.* (quoting *United States v. Fulmer*, 108 F.3d 1486 (1st Cir. 1997)); *see United States v. Whiffen*, 121 F.3d 18, 22 (1997) (affirming denial of motion to dismiss § 875(c) indictment, holding [t]he proper interpretation of [the defendant's] remarks . . . is a question of fact and, therefore, appropriately left for the jury."); *see also United Sates v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013) ("in the usual case, whether a communication constitutes a threat or a true threat 'is a matter to be decided by the trier of fact.'") (citation omitted).

Moreover, Lindner's underlying argument that a true threat must contain an explicit statement about injuring the victim is without merit. ECF No. 36 at 6 (stating "nowhere in Defendant Lindner's voice mail does he threaten to injure Victim 1"). The First Circuit has "rejected any requirement that threats be 'unequivocal, unconditional, and specific.' Rather, 'use of ambiguous language does not preclude a statement from being a threat.'" *Clemens*, 738 F.3d at 8 (quoting *Fulmer*, 108 F.3d at 1492 (holding that a jury could find the phrase "[t]he silver bullets are coming" represented a threat despite evidence of that phrase's potential innocuous meaning)); s*ee also United States v. Turner*, 720 F.3d 411, 424 (2d Cir. 2013) (stating that the Second Circuit has "affirmed convictions for threats that were both conditional and inexplicit").

Here, in the wake of social media discourse and traditional media coverage regarding the availability of gender-affirming care for young people in the transgender community, Lindner decided to deploy threats designed to prevent Victim 1 from offering medical services that many parents seek on behalf of their children. Lindner read information on social media and news reports and chose to seek out Victim 1, a medical professional working thousands of miles away, who he had never met. Based on his opposition to the kind of medical care Victim 1 provides, Lindner found Victim 1's telephone number at the Center. He called the Center and left his anonymous voicemail, indicating that Victim 1 and others were "all gonna burn." Lindner elaborated with the ominous warning that "[t]here's a group of people on their way to handle" Victim 1, a reference to a seemingly anonymous group who planned to travel to harm Victim 1. Lindner continued by informing Victim 1 that Victim 1 had "signed [Victim 1's] own warrant" or "ticket." And he concluded with an obviously insincere exhortation that Victim 1 "sleep well," followed by a vulgar slur. In context, these statements fall squarely within the spectrum of communications that a reasonable jury could conclude constitute true threats. Consistent with *Clemens*, the government urges the Court to rule that this determination will be made by a jury. *Clemens*, 738 F.3d at 13.

## Conclusion

For the foregoing reasons, the government respectfully requests that the Court deny defendant Matthew Jordan Lindner's motion to dismiss.

        Respectfully submitted,

        JOSHUA S. LEVY
        Acting United States Attorney

By:    /s/ Brian A. Fogerty
        BRIAN A. FOGERTY
        NATHANIEL YEAGER
        Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

          /s/ Brian A. Fogerty
          BRIAN A. FOGERTY
          Assistant United States Attorney

Date: October 5, 2023